# EXHIBIT 4

2022-019674



# ERIE COUNTY CLERK OF RECORDS
## RECORDER OF DEEDS DIVISION

Aubrea Hagerty-Haynes,
Clerk of Records

Erie County Courthouse I 140 W. Sixth St., Suite 121, Erie, PA 16501 I Phone: 814-451-6246
Fax: 814-451-6213 I www.eriecountypa.gov I recorder@eriecountypa.gov

---

### Certification Page
# DO NOT DETACH
### This page is now part of this legal document.

---

| | | |
|---|---|---|
| Instrument Number: 2022-019674 | Record Date: | 9/08/2022 |
| Instrument Type: MORTGAGE | Record Time: | 08:25:34 |
| Indexed Party: PAEX LANDMARK SQUARE PA LP | Receipt No.: | 1328813 |

---                                                                  ---

### Receipt Distribution

| Fee/Tax Description | Payment Amount |
|---|---|
| MORTGAGE | 13.00 |
| MORTGAGE-WRIT | .50 |
| LOW INCOME HOUSING | 13.00 |
| BLIGHTED PROP/DEMO | 14.25 |
| J.C.S. / A.T.J | 40.25 |
| CO REC MGT ACCT | 2.00 |
| ROD REC MGT ACCT | 3.00 |
| EXTRA PAGES | 58.00 |
| ---------------- | |
| ACH Transaction | $144.00 |
| Total Received......... | $144.00 |

Recording Page Count:    34

Paid By Remarks: Filed Electronically

I HEREBY **CERTIFY** THAT THIS DOCUMENT
IS RECORDED IN THE RECORDER OF DEEDS
OFFICE OF ERIE COUNTY, PENNSYLVANIA

AUBREA HAGERTY-HAYNES
ERIE COUNTY CLERK OF RECORDS

NOTE:    Some information subject to change during the verification process and may not be reflected on this page.

Upon recording please return
this instrument to:

Michael A. Valinetz
Dinsmore & Shohl LLP
One Indiana Square, Suite 1800
Indianapolis, Indiana 46204

### <u>MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FINANCING STATEMENT, AND FIXTURE FILING</u>
### <u>(Facility A)</u>

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FINANCING STATEMENT, AND FIXTURE FILING (Facility A) (this "**Mortgage**"), is executed to be effective as of the 2nd day of September, 2022 by PAEX Landmark Square PA LP, a Pennsylvania limited partnership having a mailing address of 10 Hill Street, Suite 1E, Newark, New Jersey 07102 (hereinafter referred to as "**Mortgagor**"), in favor of MERCHANTS BANK OF INDIANA, having banking offices at 410 Monon Boulevard, 5th Floor, Carmel, Indiana 46032 (hereinafter referred to as "**Lender**").

### <u>RECITALS:</u>

I.    Mortgagor has requested that Lender extend to Mortgagor a loan in the principal amount of Ten Million Seven Hundred Thirty-Six Thousand and 00/100 Dollars ($10,736,000.00) (such loan as from time to time modified or amended is herein referred to as the "**Loan**").

II.    The Loan shall be advanced pursuant to the terms and conditions of a certain Loan Agreement (Facility A) of even date herewith, executed by and between Mortgagor and Lender (such loan agreement as may be from time to time modified, amended or restated is hereinafter referred to as the "**Loan Agreement**").

III.    The Loan shall be evidenced by a certain promissory note executed by Mortgagor of even date herewith and concurrently with this Mortgage and payable to the order of Lender in the principal sum of the Loan [such promissory note, and/or any promissory note which is a direct or remote renewal, extension, modification, amendment, restatement or replacement of such promissory note, as may be from time to time modified or amended is hereinafter referred to as the "**Note**"; "**Loan Document**" and "**Loan Documents**" shall mean individually and

collectively, this Mortgage, the Note, the Loan Agreement and all other documents evidencing the Loan or entered into by Mortgagor in connection with the indebtedness secured hereby as such documents and agreements may be modified or amended from time to time and/or any documents and agreements which replace or restate such documents and agreements; Loan Documents shall also include, if applicable, any instrument, agreement or document executed in connection with any Rate Management Transaction (herein defined) now or hereafter entered into by Mortgagor].

III.    Lender requires, among other things, as a condition to making the Loan that Mortgagor execute and deliver this Mortgage to Lender.

## GRANTING CLAUSES

NOW, THEREFORE, intending to be legally bound, and FOR GOOD AND VALUABLE CONSIDERATION, including the extension of certain indebtedness to Mortgagor which is secured hereby, the receipt of which is hereby acknowledged, Mortgagor WITH MORTGAGE COVENANTS hereby irrevocably, unconditionally and absolutely mortgages, warrants, grants, transfers, pledges, sets over, bargains, sells, enfeoffs, deeds, conveys and assigns to Lender, and transfers and grants to Lender a security interest in, all estates, rights, title and interest which Mortgagor now has or may later acquire in and to the following properties, rights and interests:

A.    The real estate located in Erie County, Pennsylvania that is more particularly described in Exhibit "A" attached hereto and by reference made a part hereof (hereinafter referred to as the "**Real Estate**");

B.    All of the present and future estates, interests and rights of Mortgagor in and to (i) the Real Estate, (ii) all real estate in which Mortgagor may now or hereafter acquire an interest by reason of any accession or accretion with respect to the Real Estate and (iii) all real estate situated within the rights-of-way of any streets, alleys and roads adjoining the Real Estate;

C.    All buildings, structures, improvements and fixtures (including but not limited to all lighting fixtures and mechanical equipment) now or hereafter erected or placed in or upon the Real Estate or now or hereafter attached to or used in connection with the Real Estate to the extent such items may be considered part of the Real Estate under applicable law;

D.    All tenements, hereditaments, easements, appurtenances and other rights and privileges thereunto now or hereafter attaching and belonging, or in any way appertaining to the Real Estate, including without limitation (i) all surface and subsurface soils, (ii) all minerals, elements, oil, gas, and other commercially valuable substances which may be in, under or produced from any part of the Real Estate, and all right and interest in any oil, gas or other mineral lease, pipeline agreement or other instrument related to the production or sale of oil, gas or any other commercially valuable substances which may be in, under or produced from any part of the Real Estate now or hereafter entered into, (iii) all air rights, and (iv) all water and water rights;

2

E.      All rents, issues, profits, income, cash, proceeds, accounts, accounts receivable, instruments, letter of credit rights, insurance proceeds, deposit and other accounts, contract rights and general intangibles arising of or from the Real Estate or the improvements from time to time located thereon, including but not limited to the rents, income and profits arising from the operation of any business and all fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in any hotel, motel, or other lodging properties located on the Real Estate (funds obtained as such rents, income, profits, fees, charges, accounts or other payments and held in any reserve, account or credit balance shall retain the character of such rents, income, profits, fees, charges, accounts or other payments);

F.      All interests, estates or other rights and claims, arising in law or in equity, which Mortgagor now has or may hereafter acquire in any of the foregoing, including without limitation any greater estate Mortgagor may hereafter acquire in the Real Estate or improvements located thereon (the interests, estates and other rights and claims described in paragraphs A through F are hereinafter collectively referred to as the "**Premises**");

G.      All leases, subleases, subtenancies, licenses, occupancy agreements and other agreements for the leasing, use, occupancy or enjoyment of any portion or all of the Premises now or hereafter existing, and all amendments, renewals and extensions thereof (hereinafter collectively referred to as the "**Leases**");

H.      All present and future guaranties of the performance of any lessee under any of the Leases and all letters of credit issued, and all other collateral granted, as security for the obligations of any tenant arising under or in connection with any of the Leases;

I.      All monies, deposit accounts, furniture, equipment, inventory, fixtures, accounts, accounts receivable, chattel paper, documents, investment property, trademarks and all trade name agreements, logos, licenses, instruments, contract rights, insurance proceeds, commercial tort claims, franchise agreements, software, letter of credit rights, and general intangibles (including payment intangibles) in which Mortgagor now or hereafter has an interest, individually or with others, and which are located upon, used in connection with, related to or arising out of the Premises, and all additions, accessions and accretions to, replacements and substitutions for, products of and proceeds from any of the foregoing;

J.      All insurance policies relating to the Premises and all claims and rights to payment of proceeds and other sums payable thereunder or in connection therewith;

K.      All awards, compensation and settlements in lieu thereof made as a result of the taking by power of eminent domain of the whole or any part of the Premises, including any awards for damages sustained to the Premises, for a temporary taking, change of grade of streets or taking of access;

L.      All present and future deposits and revenues relating to the Premises, including without limitation security deposits, replacement revenue escrows, tax and insurance escrows and working capital reserves or escrows, and all funds of Mortgagor from time to time on deposit with Lender;

M.    All present and future building permits, operating permits, variances, licenses, governmental permits and approvals, utility permits, certificates of occupancy, and other permits, approvals and authorizations now or hereafter issued in connection with and the development, construction, equipping, maintenance or operation of the Premises;

N.    All present and future contracts or agreements relating to the design, development, construction, furnishing, equipping, operation, use or maintenance of the Premises, including without limitation all construction contracts and subcontracts, architectural contracts, engineering contracts and other design contracts and purchase agreements;

O.    All present and future contractor's, subcontractor's and supplier's warranties, guarantees of performance and undertakings with respect to services or materials furnished in connection with the design, development, construction, equipping, operation, use or maintenance of the Premises;

P.    All present and future service and other agreements relating to the operation, management, maintenance and repair of the Premises or the buildings and improvements thereon, whether now owned by Mortgagor or hereafter acquired or arising, including without limitation any present or future management agreement relating to the management or operation of the Premises;

Q.    All present and future plans and specifications, surveys, site plans, soil reports, drawings and papers relating to the Premises and the development, design, construction and equipping of the improvements on the Premises, whether now owned by Mortgagor or hereafter acquired or arising;

R.    All present and future contracts and agreements providing for financial incentives, grants, tax credits, loans, infrastructure development by third parties or other financial support in connection with the design, development, construction, equipping, operation, use or maintenance of the Premises, including without limitation all tax increment financing agreements, bond financing agreements, tax credit allocations and awards, agreements for payment in lieu of taxes and other governmental project agreements;

S.    All building supplies and materials ordered or purchased for use in connection with the construction and equipping of the improvements on the Premises, whether now owned by Mortgagor or hereafter acquired or arising;

T.    All proceeds and contract rights and payments payable to Mortgagor under any loan commitment for financing of the Premises;

U.    Any contract or agreement previously or hereafter entered into by Mortgagor (but specifically excluding any of Mortgagor's obligations or liabilities arising in connection with in any such contract or agreement) which is an interest rate protection agreement, foreign currency exchange agreement, commodity price protection agreement, or other interest or currency exchange rate or commodity price hedging arrangement, including without limitation any contract or agreement relating to a rate swap, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar

4

transaction, forward transaction, currency swap transaction, cross-currency rate swap transaction, currency option or any other similar hedging arrangement or transaction;

V.   All present and future purchase and sale agreements for the purchase of any portion of the Premises or other property located on the Premises, including without limitation, security deposits, earnest money deposits, association fees or assessments, and related escrows; and

W.   All additions, accessions and accretions to, replacements and substitutions for, products of and any and all cash and non-cash proceeds from any of the property described above.

The personal property described above, including without limitation the property, rights, interests and claims described in paragraphs H through W above, are hereinafter collectively referred to as the "**Chattels**".   Notwithstanding anything contained herein, Chattels shall not include any personal property or trade fixtures which any tenant of the Premises owns and is entitled to remove pursuant to its lease except to the extent that Mortgagor shall have any right or interest in such personal property.   Furthermore, (i) the collateral assignment of the rights and interests of Mortgagor in any franchise or license agreement relating to the operation of any hotel shall be limited and subject to the terms and conditions set forth in any written agreement between Lender and the franchisor under the franchise agreements, and (ii) the collateral assignment of any governmental permits and licenses shall be subject to any applicable legal limitations on the assignment of such items.   The Premises, Leases and Chattels are hereinafter collectively referred to as the "**Property**."

TO HAVE AND TO HOLD the Property unto Lender, its successors and assigns forever, subject however to the terms and conditions herein, and Mortgagor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND the title to the Property unto Lender against every person whomsoever claiming or to claim the same or any part thereof.

**MORTGAGOR HEREBY FURTHER ASSIGNS, REPRESENTS, WARRANTS, COVENANTS AND AGREES AS FOLLOWS:**

1.   The Indebtedness and Obligations Secured.   This Mortgage is given to secure (i) the performance and observance of the covenants and agreements contained herein and in any other agreement executed by Mortgagor to Lender in connection with the indebtedness secured hereby, (ii) the payment and performance when due of all present and future indebtedness and obligations of Mortgagor to Lender and, with respect to any Rate Management Transaction as defined herein, to any affiliate of Lender, individually or with others, in accordance with the terms and conditions of such indebtedness and obligations, whether direct or indirect, absolute or contingent and whether evidenced by promissory notes, agreements, checks, drafts, letters of credit, bills, overdrafts, open accounts or otherwise, and (iii) any and all extensions, renewals, increases, modifications, amendments, restatements and replacements of any present and future indebtedness and obligations of Mortgagor to Lender.   The indebtedness and obligations secured by this Mortgage include, without limitation, the indebtedness evidenced by or arising in connection with the following:

        a.    the Note, with interest thereon at the rate and payable in the manner described in the Note, which is due and payable on or before September 10, 2025, as from time to time modified, amended, increased, renewed or extended, and any notes that renew, restate or replace the Note;

        b.    the other Loan Documents, as from time to time modified, amended, replaced or restated, provided however, this Mortgage shall not secure the indebtedness and obligations arising under any Loan Document that expressly states that the indebtedness and obligations arising under such Loan Document are to be unsecured;

        c.    any instrument, agreement or document executed, or any arrangement or device entered into, in connection with any Rate Management Transaction as defined in Paragraph 2 of this Mortgage; and

        d.    any and all extensions, renewals, increases, modifications, amendments, restatements and replacements of any of the foregoing.

In addition to any other indebtedness and obligations described herein as secured by this Mortgage, this Mortgage secures any and all future advances, together with any interest thereon, which are made by Lender, either pursuant to any Loan Document (defined herein) or at Lender's option, to or for the benefit of Mortgagor up to a maximum principal amount outstanding at any point in time of Twenty One Million Four Hundred Seventy-Two Thousand and 00/100 Dollars ($21,472,000.00), such maximum principal amount is stated herein for the purpose of any applicable future advance laws and is not deemed a commitment by Lender to make any future advances. It is the intention of Mortgagor and Lender that the lien of this Mortgage with respect to any future advances, modifications, extensions and renewals referred to herein shall have the same priority to which this Mortgage otherwise would be entitled as of the date this Mortgage is executed and recorded without regard to the fact that such future obligations, advances, modifications, extensions or renewals may occur after this Mortgage is executed.

        2.    <u>Rate Management Transactions</u>.  In the event Mortgagor and Lender, or any subsidiary or affiliate of Lender, enter into any Rate Management Transaction, Mortgagor shall be responsible for any and all obligations, contingent or otherwise, whether now existing or hereafter arising, to Lender, or to any of Lender's subsidiaries or affiliates or successors, arising under or in connection with any such Rate Management Transactions, all of which obligations shall be secured by this Mortgage and entitled to all of the benefits and protections afforded to Lender under or pursuant to this Mortgage. Mortgagor agrees that for purposes of this Mortgage, any indebtedness and obligations which Mortgagor may have to any subsidiary or affiliate of Lender in connection with any Rate Management Transaction shall be deemed to be indebtedness and obligations owed directly to Lender and shall be secured by this Mortgage and may be collected and recovered by Lender in any action to enforce this Mortgage as if such indebtedness and obligations were directly owed to Lender. For purposes of this Mortgage, **"Rate Management Transaction"** means any transaction (including any agreement with respect thereto) now existing or hereafter entered into between Mortgagor and Lender, or any of Lender's subsidiaries or affiliates or their successors, which is an interest rate protection agreement, foreign currency exchange agreement, commodity price protection agreement, or other interest or currency exchange rate or commodity price hedging arrangement, including

without limitation (i) any rate swap, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar transaction, forward transaction, currency swap transaction, cross-currency rate swap transaction, currency option or any other similar hedging arrangement or transaction (including any option with respect to any of these transactions) or any combination thereof, whether linked to one or more interest rates, foreign currencies, commodity prices, equity prices or other financial measures, (ii) any transaction which is governed or evidenced by an ISDA Master Agreement and any related schedule, confirmation or document confirming or evidencing the transaction or trade details and (iii) any existing or future swap agreement as defined in 11 U.S.C. § 101, et seq. and the regulations promulgated thereunder, as in effect from time to time.

3.   <u>General Representations and Warranties</u>.   Mortgagor covenants, warrants and represents that (a) Mortgagor is the owner in fee simple of the Premises and has full power to mortgage and assign the same, (b) Mortgagor is now the absolute owner of the Leases with full right and title to assign the Leases and the rents and income generated therefrom, (c) Mortgagor has good and valid title to the Chattels free and clear of all security interests and encumbrances and has full power to grant a security interest in the same, (d) the Premises are free and clear of any and all liens and encumbrances, except use restrictions of record, zoning ordinances, rights of way and easements of record, the rights of tenants now in possession and the lien of current taxes and assessments not delinquent, (e) this Mortgage creates a valid lien in favor of Lender on the Premises as provided for herein, (f) this Mortgage creates a valid assignment of the Leases, and rents and income therefrom, in favor of Lender as provided for herein, and (g) this Mortgage creates a valid security interest in favor of Lender in the Chattels as provided for herein. Mortgagor will make any further assurances of title that Lender may require and will warrant and defend the Property against all lawful claims and demands whatsoever.   Mortgagor shall not acquire any Property covered by this Mortgage that is subject to any security interest or other charge or lien having priority over the lien or security interest granted under this Mortgage. Mortgagor acknowledges and confirms that Lender is extending the indebtedness evidenced by the Note with the expectation that this Mortgage will be a first lien upon the Property free and clear of any and all liens and encumbrances, except the lien of current taxes and assessments not delinquent.

4.   <u>Payment of Indebtedness and Observance of Covenants</u>.   Mortgagor will pay the Note and all other indebtedness secured hereby in accordance with its terms and will perform and comply with all of the terms and provisions contained in the Note and in any other instrument or agreement given as security for the payment of or executed in connection with the Note.

5.   <u>Due on Sale or Encumbrance</u>.   In the event a Prohibited Transfer occurs (as that term is defined in the Loan Agreement) without the prior written approval of Lender being first obtained, whether such event is voluntary, involuntary or by operation of law, then in any such event, the whole of the indebtedness secured hereby shall, at the election of Lender at any time thereafter, become immediately due and payable, without notice or demand and any such event shall be deemed to be an Event of Default under this Mortgage.   Consent as to any one Prohibited Transfer by Lender shall not be deemed to be a waiver of the right to require consent to future or successive transactions.

6.     <u>Maintain Property and Liability Insurance</u>.  Mortgagor, at Mortgagor's expense and for the benefit of Mortgagor and Lender, shall obtain and maintain in effect at all times the insurance coverage with respect to Mortgagor and the Premises and the Chattels that is required to be maintained under the terms of the Loan Agreement.  In addition, Mortgagor shall furnish Lender with such written certificates and other confirmations of such insurance at such times and in such form as Lender may require.

7.     <u>Assignment of Insurance Policies, Application of Proceeds and Additional Requirements</u>.  All insurance policies are to be held by and, to the extent of its interests, for the benefit of and first payable in case of loss to Lender, and Mortgagor shall deliver to Lender a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration.  Lender shall have the right to settle and compromise any and all claims under any of the insurance policies required to be maintained by Mortgagor under this Mortgage; to demand, receive and receipt for all monies payable thereunder; and to execute in the name of Mortgagor or Lender or both any proof of loss, notice or other instruments in connection with such policies or any loss thereunder.  All amounts recoverable under any policy are hereby assigned to Lender and, in the event of a loss, each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender rather than jointly to Lender and Mortgagor, and the amount collected shall be used in any one or more of the following ways, at the option of Lender: (a) applied upon the indebtedness secured hereby, whether or not such indebtedness is then due and payable, (b) used to fulfill any of the covenants contained herein, or (c) used to replace or restore the Premises and the Chattels to its condition prior to such damage in all material respects or otherwise in a condition satisfactory to Lender.  All insurance proceeds applied toward the indebtedness secured hereby shall be applied without the imposition of a prepayment penalty or premium.  In the event of the foreclosure of this Mortgage or a transfer of the Premises in lieu thereof, all rights, title and interest of Mortgagor in and to such policies of insurance shall pass to the purchaser or grantee and Mortgagor hereby irrevocably appoints Lender as attorney-in-fact of Mortgagor to assign any policies in the event of the foreclosure of this Mortgage or a conveyance in lieu of foreclosure.  Mortgagor transfers and grants to Lender a security interest in and to all monies at any time held by Lender pursuant to this paragraph and such monies and all of Mortgagor's right, title and interest therein are hereby assigned to Lender, all as additional security for the indebtedness secured hereby.  Mortgagor warrants and represents to Lender that Mortgagor has not received any notice from any insurance company of any defects or inadequacies in the Premises which would adversely affect the insurability of the Premises or materially increase the cost of insuring the Premises beyond that which is customarily charged for similar property in the vicinity of the Premises used for a similar purpose.  Mortgagor covenants and agrees to provide to Lender, promptly after receipt by Mortgagor, copies of any notices received from any insurance company regarding any defects or inadequacies in the Premises. Notwithstanding anything contained herein to the contrary, if Mortgagor provides a written request to Lender within thirty (30) days after the occurrence of any casualty in which less than fifty percent (50%) of the insured value of the improvements located on the Real Estate are damaged, to use the insurance proceeds to restore or rebuild the Premises, then Lender shall disburse the net proceeds of any such insurance proceeds received by Lender to or for the benefit of Mortgagor for the purpose of restoring the Premises provided that the following conditions are satisfied in a manner reasonably acceptable to Lender:

a.     No material adverse change in the financial condition of Mortgagor has occurred prior to the loss or casualty;

b.     There is no default or event which with the giving of notice or lapse of time would constitute an Event of Default;

c.     The Premises are to be restored to their original condition prior to the occurrence of the casualty with such modifications as Lender may approve in its reasonable discretion;

d.     Lender determines, in its reasonable discretion, that such restoration can be completed to Lender's satisfaction at least three (3) months prior to the maturity date of the Note;

e.     Lender determines, in its reasonable discretion, that Mortgagor has sufficient funds available to Mortgagor, including without limitation anticipated payments from business interruption insurance, to pay when due all costs and expenses relating to the ownership and operation of the Premises during such restoration, including without limitation all principal and interest payments, escrow payments, payments to establish or maintain reserves or other payments that will become due and payable under Note and the other Loan Documents;

f.     Lender determines, in its reasonable discretion, that such net insurance proceeds together with any additional funds made available for such purpose by Mortgagor and deposited with Lender shall be sufficient to restore the Premises in accordance with plans and specifications approved by Lender and Mortgagor, free and clear of all liens except the lien of this Mortgage;

g.     If requested by Lender, Mortgagor provides to Lender an appraisal from an appraiser licensed by the Commonwealth of Pennsylvania acceptable to Lender for the Premises as restored which shows an as-completed value of at least an amount such that the ratio of (i) the outstanding amount of the indebtedness secured hereby and any other indebtedness owed by Mortgagor to Lender to (ii) the amount of the appraised value of the Premises as restored, will not be more than eighty percent (80%);

h.     Lender shall not be deemed a fiduciary, and shall have no obligation to restore or repair the Premises;

i.     Mortgagor has executed and delivered to Lender an escrow agreement, containing such terms and conditions as Lender may require, which sets forth the terms, conditions, plans and procedures for the disbursement of all insurance proceeds;

j.     The insurance companies providing coverage for the Premises do not deny any liability for the payment of the claims and all insurance proceeds payable in connection with such claims have been paid to Lender; and

k.     Lender is reimbursed for (i) all costs incurred by Lender in connection with the collection, handling, and investing of such funds or obtaining a settlement of an

9

insurance claim (including but not limited to reasonable attorney's fees and expenses incurred by Lender), (ii) all costs and expenses incurred by Lender in connection with advancing such insurance proceeds for the restoration or rebuilding of the Premises, including without limitation any inspection fees, engineer review fees, title insurance update fees and survey fees, and (iii) all reasonable consultant fees and expenses and attorneys' fees and expenses incurred by Lender in connection with evaluating the casualty, processing Mortgagor's request to use the insurance proceeds to restore or rebuild the Premises and providing any advice or consultation regarding the obligations, rights and remedies of Lender with respect to the insurance proceeds.

Lender at its option may waive any requirement set forth herein for the advancement of insurance proceeds. Notwithstanding the foregoing, if the total net casualty insurance proceeds payable with respect to a particular casualty are Fifty Thousand Dollars ($50,000.00) or less, then Mortgagor shall be entitled to retain such proceeds provided (at the time of the casualty and/or the payment of proceeds) there is no default or event which with the giving of notice or lapse of time would constitute an Event of Default under this Mortgage and Mortgagor applies such proceeds to restoring the Premises.

8.    Taxes and Impositions. Mortgagor will pay, before the same become delinquent or any penalty for non-payment attaches thereto, all taxes, assessments and charges of every nature now or hereafter levied or assessed against or upon the Property, or any part thereof or upon the rents, issues, income or profits therefrom, which by reason of non-payment could become a lien prior or junior to this Mortgage, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will submit to Lender such evidence of the timely payment of such taxes, assessments and charges as Lender may require. Notwithstanding the foregoing, Mortgagor shall have the right to contest in good faith by appropriate legal or other proceedings the validity or amount of any such tax, assessment or charge, provided that (a) Mortgagor gives Lender prior written notice of its intent to contest the same, (b) if requested by Lender, Mortgagor demonstrates to the reasonable satisfaction of Lender that such legal or other proceedings shall operate to prevent the sale of the Property (or any portion thereof) to satisfy the payment of the tax, assessment, or charge in question prior to final determination of such proceedings and (c) if requested by Lender, Mortgagor provides a sufficient undertaking as may be required or permitted by law to accomplish the discharge or release of any lien which may attach to the Property as a result of such matter. Furthermore, Mortgagor consents to the intervention by Lender in any such judicial proceeding if Lender determines such intervention is necessary or desirable to protect the interest of Lender. In such event, Mortgagor agrees to reimburse Lender upon demand for all reasonable attorneys' fees, costs and expenses incurred by Lender in connection with its intervention in such judicial proceeding. If at any time any governmental authority shall require documentary, revenue or other stamps on or with respect to this Mortgage, or if at any time after the date hereof there shall be assessed, levied or imposed a tax or assessment on the Property in lieu or in addition to real estate taxes and assessments imposed as of the date hereof, or if there shall be assessed, levied or imposed any fee, tax, charge or assessment on Lender measured by or based in whole or in part upon the amount of the indebtedness secured hereby, then all such stamps, fees, taxes or assessments shall be deemed additional sums payable hereunder by Mortgagor to Lender and Mortgagor shall pay the same prior to delinquency or shall reimburse Lender on demand for the payment of same by Lender, and a failure of Mortgagor to make any such payment within ten

10

(10) days after when due shall constitute an Event of Default hereunder; provided, however, the foregoing shall not be construed as obligating Mortgagor to, and Mortgagor shall have no obligation to, pay any state or federal income taxes or state intangibles taxes levied on Lender or the indebtedness secured hereby. Mortgagor shall cause at all times the Premises to be segregated and separately assessed on the tax rolls of the city or county in which the Premises is located, from all other property. Unless Lender has paid such items from any escrow account maintained pursuant to this Mortgage, Mortgagor shall provide to Lender within thirty (30) days of when the same become due, copies of paid receipts for all taxes, assessments and charges on or against the Property. Lender may, at its sole discretion from time to time, enter into agreements with third parties for the monitoring of the payment of real estate taxes and other assessments affecting the Property and Mortgagor shall reimburse Lender upon demand for all fees and expenses incurred by Lender in connection with such contracts.

9.    Loan Agreement.    This Mortgage is executed in connection with the Loan Agreement and secures any and all advancements and indebtedness arising and accruing thereunder to the same extent as though the Loan Agreement were fully incorporated in this Mortgage and if any Event of Default (as defined in the Loan Agreement) shall occur under the Loan Agreement the same shall constitute an Event of Default under this Mortgage entitling Lender to all rights and remedies conferred upon Lender by the terms of this Mortgage or otherwise by law, as in the case of any other default.

10.    Maintenance of Premises and Payment of Charges.    Mortgagor shall not abandon the Property, shall keep and maintain the Property in good condition, repair, maintenance and operating condition free from any waste or misuse, and shall promptly repair and restore any buildings, improvements or structures now or hereafter on the Premises which may become damaged or destroyed to their condition prior to any such damage or destruction. Mortgagor will not commit waste or allow waste to be committed against the Property. Without the prior consent of Lender, Mortgagor agrees that it will not construct or expand any improvements on the Premises, erect any new improvements nor make any material alterations in any improvements which shall alter the basic structure, diminish the market value or change the existing architectural character of the Premises, nor remove or demolish any improvements. If Mortgagor shall neglect or refuse to keep the Property in good repair, to maintain and pay the premiums for insurance which may be required, or to pay and discharge all taxes, assessments and charges of every nature assessed against Mortgagor, or the Property, all as provided for under the terms of this Mortgage, Lender may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments and charges, and any amounts paid as a result thereof, together with interest thereon at the rate which is equal to the "Default Rate" of interest as defined under the Note from the date of payment, shall be immediately due and payable by Mortgagor to Lender, and until paid shall be added to and become a part of the indebtedness evidenced by the Note and secured hereby, and the same may be collected in any suit hereon or upon the Note, or Lender, by payment of any tax, assessment or charge may, at its discretion, be subrogated to the rights of the governmental subdivisions levying such tax, assessment or charge. No such advances shall be deemed to relieve Mortgagor from any Event of Default or impair any right or remedy of Lender, and the exercise by Lender of the right to make advances shall be optional with Lender and not obligatory and Lender shall not in any case be liable to Mortgagor for a failure to exercise any such right.

11

11.    <u>Compliance With Laws and Ordinances; Zoning</u>.  Mortgagor will not commit or allow the commission of any violation of any law, regulation, ordinance or contract affecting the Property.  Lender shall at reasonable times during normal business hours have free access to the Property for the purposes of inspection and the exercise of its rights hereunder, subject to the rights of tenants under leases.  Mortgagor covenants and agrees that Mortgagor shall cause at all times the Premises to comply with all applicable laws, regulations, building codes, zoning ordinances and requirements of any federal, state or local regulatory agencies having jurisdiction, including but not limited to causing the Premises to be in compliance with the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) and the Americans with Disabilities Act of 1990 Architectural Guidelines (as amended from time to time).  Mortgagor will indemnify Lender and save it harmless from any and all loss, damage or expense, including reasonable attorneys' fees, resulting from or arising out of any failure of the Premises to comply with all such laws and regulations and the same is made a part of the indebtedness secured hereby.  Mortgagor shall comply with all restrictions and covenants affecting the Property.  Without the prior written consent of Lender, Mortgagor shall not request, initiate, join in or consent to (i) any private covenant or any public or private restriction which would detract from or limit the value or utility of the Property, or (ii) any zoning ordinance or rezoning classification affecting the Premises.

12.    <u>Eminent Domain</u>.  All awards made by any public or quasi-public authority for damages to the Property by virtue of an exercise of the right of eminent domain by such authority, including any award for a taking of title, possession or right of access to a public way, or for any change of grade of streets affecting the Property, are hereby assigned to Lender and Lender, at its option, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award to the extent of the indebtedness secured by or payable under this Mortgage from the appropriate governmental authority.  Such award shall be used in any one or more of the following ways, at the option of Lender:  (i) applied upon the indebtedness secured hereby or payable hereunder, whether or not such indebtedness is then due and payable, or (ii) applied to replace or restore the Property to a condition satisfactory to Lender.  Upon the occurrence and during the continuance of an Event of Default hereunder, Lender is authorized, at its option, to appear in and prosecute in its own name any action or proceeding or, with consent and joinder of Mortgagor, to make any compromise or settlement in connection with such taking or damage.  Mortgagor will, upon request by Lender, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning, upon the occurrence and during the continuance of an Event of Default hereunder, all proceeds from such awards to Lender free and clear and discharged of any and all encumbrances or claims of any kind or nature whatsoever.  Mortgagor transfers and grants to Lender a security interest in and to all monies at any time held by Lender pursuant to this paragraph and such monies and all of Mortgagor's right, title and interest therein are hereby assigned to Lender, all as additional security for the indebtedness secured hereby.  All condemnation proceeds applied toward the indebtedness secured hereby shall be applied without the imposition of a prepayment penalty or premium. Notwithstanding anything contained herein to the contrary, if Mortgagor provides a written request to Lender within thirty (30) days after the occurrence of any condemnation in which less than ten percent (10%) of the market value of the improvements located on the Real Estate are condemned, to use the condemnation proceeds to restore or rebuild the Property, then Lender shall disburse the net proceeds of any such condemnation award received by Lender, after deducting from such proceeds any expenses incurred by Lender in the collection or

handling of such funds (including but not limited to reasonable attorney's fees incurred by Lender in collecting or handling such funds or obtaining a settlement of a condemnation claim), to or for the benefit of Mortgagor for the purpose of restoring the Property in accordance with terms, conditions, plans and procedures acceptable to Lender provided that the following conditions are satisfied in a manner reasonably acceptable to Lender:

     a.    No material adverse change in the financial condition of Mortgagor has occurred prior to the loss or casualty;

     b.    There is no default or event which with the giving of notice or lapse of time would constitute an Event of Default under this Mortgage;

     c.    The Property can be restored to a size and economic condition satisfactory to Lender in its sole but reasonable discretion.

     d.    Lender determines, in its reasonable discretion, that such restoration can be completed to Lender's satisfaction at least three (3) months prior to the maturity date of the Note;

     e.    Lender determines, in its reasonable discretion, that Mortgagor has sufficient funds available to Mortgagor, including without limitation anticipated payments from business interruption insurance, to pay when due all costs and expenses relating to the ownership and operation of the Property during such restoration, including without limitation all principal and interest payments, escrow payments, payments to establish or maintain reserves or other payments that will become due and payable under Note and the other Loan Documents;

     f.    Lender determines, in its reasonable discretion, that such net condemnation proceeds together with any additional funds made available for such purpose by Mortgagor and deposited with Lender shall be sufficient to restore the Property in accordance with plans and specifications reasonably approved by Lender and Mortgagor, free and clear of all liens except the lien of this Mortgage and such other liens approved by Lender;

     g.    Mortgagor provides to Lender an appraisal from an appraiser licensed by the Commonwealth of Pennsylvania acceptable to Lender for the mortgaged premises as restored which shows an as-completed value of at least an amount such that the ratio of (i) the outstanding amount of the indebtedness secured hereby and any other indebtedness owed by Mortgagor to Lender to (ii) the amount of the appraised value of the Premises as restored, will not be more than eighty percent (80%);

     h.    Lender shall not be deemed a fiduciary, and shall have no obligation to restore or repair the Property;

     i.    Mortgagor has executed and delivered to Lender an escrow agreement, containing such terms and conditions as Lender may require, which sets forth the terms, conditions, plans and procedures for the disbursement of all condemnation proceeds; and

j.    Lender is reimbursed for (i) all costs incurred by Lender in connection with the collection, handling, and investing of such funds or obtaining a settlement of a condemnation claim (including but not limited to reasonable attorney's fees and expenses incurred by Lender), (ii) all costs and expenses incurred by Lender in connection with advancing such condemnation proceeds for the restoration or rebuilding of the Property, including without limitation any inspection fees, engineer review fees, title insurance update fees and survey fees, and (iii) all reasonable consultant fees and expenses and attorneys' fees and expenses incurred by Lender in connection with evaluating the condemnation, processing Mortgagor's request to use the condemnation proceeds to restore or rebuild the Property and providing any advice or consultation regarding the obligations, rights and remedies of Lender with respect to the condemnation proceeds.

Lender at its option may waive any requirement set forth herein for the advancement of any condemnation proceeds.  Notwithstanding the foregoing, if the total net condemnation proceeds payable with respect to a particular condemnation are Fifty Thousand Dollars ($50,000.00) or less, then Mortgagor shall be entitled to retain such proceeds provided (at the time of the condemnation and/or the payment of proceeds) there is no default or event which with the giving of notice or lapse of time would constitute an Event of Default under this Mortgage and Mortgagor applies such proceeds to restoring the Property and to the expenses incurred by Mortgagor to settle the condemnation claim.

13.    Escrows.  Mortgagor will pay to Lender, on dates upon which interest is payable, such amounts as Lender from time to time estimates as reasonably necessary to create and maintain a reserve fund from which to pay at least thirty (30) days before the same become due, all rental payments, taxes, assessments, liens and charges on or against the Property and premiums for insurance as herein covenanted to be furnished by Mortgagor.  Provided no Event of Default exists, from time to time upon the written request of Mortgagor Lender shall advance proceeds from such reserve fund for the purpose of paying any insurance premiums, rent, taxes, assessments, liens and other charges for which Lender has established such reserve fund.  Such payments shall not be, nor deemed to be, trust funds but may be commingled with the general funds of Lender, and no interest shall be payable in respect thereof.  Upon the occurrence and during the continuance of an Event of Default hereunder, any part or all of said reserve fund may be applied to the indebtedness secured hereby and, in refunding any part of said reserve fund, Lender may deal with whomever is represented to be the owner of the Property at that time. Mortgagor transfers and grants to Lender a security interest in and to all monies at any time held by Lender pursuant to this paragraph and such monies and all of Mortgagor's right, title and interest therein are hereby assigned to Lender, all as additional security for the indebtedness secured hereby.  Mortgagor shall provide to Lender, at least fifteen (15) days prior to the due date, copies of all bills, statements or invoices for any items which are to be paid from proceeds escrowed with Lender.  Lender in making any payment hereby authorized may do so according to any bill, statement or estimate procured from the appropriate public office or according to any bill, statement or estimate received by Lender from Mortgagor or other party without inquiry into the accuracy or validity of such bill, statement or estimate.

14.    Financial Statements. Mortgagor at its expense will furnish, or cause to be furnished, to Lender within the time frames required the financial statements and other

information of Mortgagor and the guarantors of the indebtedness secured hereby as are required to be furnished pursuant to the terms of the Loan Agreement.

15.   <u>Protection of Security</u>.  Mortgagor shall promptly notify Lender of, and appear in and defend, any suit, action or proceeding that affects the Property or the rights or interest of Lender hereunder and Lender may elect to appear in or defend any such action or proceeding. Mortgagor agrees to indemnify and reimburse Lender from any and all loss, damage, expense or cost arising out of or incurred in connection with any such suit, action or proceeding, including costs of evidence of title and reasonable attorneys' fees incurred by Lender.  All such sums paid by Lender shall be paid by Mortgagor to Lender, together with interest thereon from date of payment at the rate which is equal to the "Default Rate" of interest as defined under the Note, and any such sums and the interest thereon shall be immediately due and payable and secured hereby, having the benefit of the lien hereby created as a part thereof and with its priority, all without relief from valuation or appraisement laws.

16.   <u>Indemnification</u>.  Mortgagor will indemnify Lender and save it harmless from any and all loss, damage or expense, including reasonable attorneys' fees, resulting from or arising out of the execution and delivery of this Mortgage and the terms hereof and the same is made a part of the indebtedness secured hereby.  Such amounts shall include without limitation all costs and expenses incurred by Lender in connection with the collection or enforcement of this Mortgage, including without implied limitation reasonable attorneys' fees incurred by Lender in connection with (i) the protection of any rights arising in connection with this Mortgage, (ii) the enforcement of any provision contained in this Mortgage, or (iii) the collection of any indebtedness evidenced hereby or arising in connection herewith (including without limitation attorneys' fees incurred by Lender in connection with any bankruptcy, reorganization, receivership or other proceeding affecting creditor's rights and involving a claim under this Mortgage or any document executed in connection herewith).  In addition, Mortgagor agrees to pay to Lender all reasonable attorneys' fees incurred by Lender in connection with any advice or other representation with respect to any Event of Default, regardless of whether any formal legal proceedings are initiated by Lender.  All sums paid by Lender for which Mortgagor is obligated to reimburse Lender pursuant to the terms of this Mortgage, shall be paid by Mortgagor to Lender, together with interest thereon from date of payment at the rate which is equal to the "Default Rate" of interest as defined under the Note, and any such sums and the interest thereon shall be immediately due and payable and secured hereby, having the benefit of the lien hereby created as a part thereof and with its priority, all without relief from valuation or appraisement laws.  Notwithstanding anything contained herein to the contrary, Mortgagor shall have no obligation to indemnify Lender for Lender's or its employees or agents gross negligence or willful misconduct.

17.   <u>Payment of Obligations</u>.  Mortgagor will pay all sums which if not paid may result in the acquisition or creation of a lien prior to or of equal priority with or junior to the lien of this Mortgage, or which may result in conferring upon a tenant of any part of the Property a right to recover such sums as prepaid rent or as a credit or offset against any future rental obligation.  Mortgagor shall pay all operating costs and expenses of the Property, shall keep the Property free from levy, attachment, mechanics', materialmens' and other liens, including without limitation, liens of any supplier, contractor, subcontractor, designer, engineer, architect, or vendor furnishing material or labor to any portion of the Property and shall pay when due all

indebtedness which Lender may permit which may be secured by mortgage, lien or charge on the Property. Notwithstanding anything contained herein to the contrary, Mortgagor shall have the right to contest in good faith by appropriate legal or other proceedings the validity or amount of any lien, levy, or attachment imposed upon all or any portion of the Property, provided that (a) Mortgagor gives Lender prior written notice of its intent to contest the same, (b) if requested by Lender, Mortgagor demonstrates to the reasonable satisfaction of Lender that such legal or other proceedings shall operate to prevent the sale of the Property (or any portion thereof) to satisfy payment of the amount being contested prior to final determination of such proceedings, (c) Mortgagor causes the title insurance company insuring the lien of this Mortgage to provide to Lender such affirmative coverages and endorsements as Lender may require to insure the priority of the lien of this Mortgage over the lien of any such lien, levy, or attachment, and (d) if requested by Lender, Mortgagor provides a sufficient undertaking as may be required or permitted by law to accomplish the discharge or release of any such lien, levy, or attachment as to the Property. Furthermore, Mortgagor consents to the intervention by Lender in any such judicial proceeding if Lender determines such intervention is necessary or desirable to protect the interest of Lender. In such event, Mortgagor agrees to reimburse Lender upon written demand for all reasonable attorneys' fees, costs and expenses incurred by Lender in connection with its intervention in such judicial proceeding. Any such contest shall be prosecuted with due diligence and Mortgagor shall promptly after final determination thereof pay the amount of any such lien, levy, or attachment so determined, together with all interest and penalties which may be payable in connection therewith. Notwithstanding these provisions, Mortgagor shall (and if Mortgagor shall fail so to do, Lender may but shall not be required to) pay any such lien, levy, or attachment notwithstanding such contest if in the reasonable opinion of Lender, the Property shall be in jeopardy or in danger of being forfeited or foreclosed.

      18.   <u>Subrogation</u>. Lender is subrogated for further security to the lien, although released of record, of any and all encumbrances paid with the proceeds of the indebtedness secured by this Mortgage. Accordingly, this Mortgage shall be entitled to the lien and priority of any mortgage, deed of trust, lien or other encumbrance that is paid in full or in part with the proceeds of the indebtedness secured by this Mortgage.

      19.   <u>Leases and Rents</u>. Any rental payments and other income received by Mortgagor from the Property shall be applied toward the payment when due of the principal of and interest on the Note to the extent such amounts may be due and payable from time to time and Lender may, at its option and without notice or demand, collect and receive all rentals and income due to Mortgagor under the Leases or otherwise and apply said rentals and income toward the payment of the principal of and interest on the Note or any other indebtedness due and payable to Lender under this Mortgage, including but not limited to costs of collection, expenses of operation, advancements and attorneys' fees. Such right may be exercised by Lender without regard to other security and without releasing Mortgagor from any obligation. This Mortgage shall create a perfected, absolute and present assignment of the Leases and the rents, income and profits arising from the Property to Lender. Notwithstanding the foregoing, until an Event of Default shall occur and be continuing hereunder Mortgagor is hereby permitted, at its discretion, and is hereby granted a license by Lender, to exercise all rights granted to the landlord under the Leases and to collect, but not prior to accrual, all of the rents and income arising from the Leases and the Property and to retain, use and enjoy the same unless and until an Event of Default shall occur and be continuing hereunder, provided, however, that all rents and income collected by

Mortgagor shall be applied toward operating expenses, real estate taxes and insurance relating to the Property, capital repair items necessary to the operation of the Property, and the payment of sums due and owing under the Note, this Mortgage and the other Loan Documents prior to any other expenditure or distribution by Mortgagor. The right of Mortgagor to collect the rents, income and profits arising from the Property shall constitute a revocable license in favor of Mortgagor, revocable by Lender in accordance with this Mortgage. The aforementioned license in favor of Mortgagor to collect the rents, income and profits arising from the Property and to exercise all other rights granted to the landlord under the Leases shall automatically be deemed to be revoked upon the occurrence and during the continuance of an Event of Default hereunder without further notice to Mortgagor. Further, from and after any such license termination, if Mortgagor receives any rents, income and profits arising from the Property, Mortgagor shall hold any such amounts collected in trust for the sole and exclusive benefit of Lender and Mortgagor shall, within one (1) business day after receipt of such funds, pay the same to Lender. Furthermore, from and after such Event of Default and termination of the aforementioned license, to the extent permitted by law, Lender shall have the right and authority, without any notice whatsoever to Mortgagor and without regard to the adequacy of the security for the indebtedness secured hereby, to collect all of the rents payable under the Leases, enforce the payment thereof, to exercise all other rights of Mortgagor under the Leases and to exercise all other rights and remedies of Lender under this Mortgage. Mortgagor hereby irrevocably appoints and constitutes Lender as its true and lawful attorney-in-fact with full power of substitution for and on behalf of Mortgagor, during the continuance of an Event of Default, to request, demand, enforce payment, collect and receive the rentals and income payable under the Leases or otherwise, to endorse any checks, drafts or orders evidencing the payment of rentals and income under the Leases or otherwise, and to do and perform any act which Mortgagor might do for and on its own behalf. Any security deposits received by Mortgagor shall be held in trust. Mortgagor shall notify Lender in writing in the event of any default by Mortgagor under the Leases. Mortgagor shall enforce, at its cost and expense, the full performance of all of the conditions, obligations and covenants under the Leases to be observed and performed by the tenants and occupants thereunder and shall appear and defend any action growing out of or in any manner connected with the Leases. Lender may, at its option but without the assumption of any of Mortgagor's obligations as lessor, perform any obligation of Mortgagor under the Leases, without releasing Mortgagor from any obligations herein or under the terms of the Leases. In the exercise of such power, Lender shall be entitled to reimbursement for all costs and expenses, including attorneys' fees, and the same shall be payable upon written demand or added to the Note and secured hereby. Mortgagor shall indemnify and save harmless Lender from any and all cost, expense, including reasonable attorneys' fees, or liability under the Leases or by reason of this Mortgage and against claims or demands whatsoever which may be asserted against it by reason of any alleged obligation of Lender to perform or discharge any of the terms of the Leases prior to the date that Lender becomes the fee owner of the Property at a foreclosure sale or by a conveyance by a deed-in-lieu of foreclosure. The receipt by Lender of any rental payments made by tenants and occupants pursuant to the Leases shall constitute a valid receipt and acquittance for all such rents paid, and tenants shall be under no duty or obligation concerning the proper application of any rents so paid. Unless Lender agrees in writing to the contrary, nothing herein contained and no actions taken pursuant to this Mortgage shall be construed as constituting Lender a "Mortgagee in Possession."

20.   <u>Maintain Leases</u>.  Except to the extent such actions are taken in the ordinary course of business and involve residential leases, Mortgagor shall not materially change, modify, release, waive, terminate or cancel, surrender, alter or amend the Leases or any of the terms and provisions thereof, including the rentals thereunder, approve any subletting or assignment by any lessee under the Leases, nor assign or encumber its rights, title and interest in and to the Leases, nor waive, excuse, condone or in any manner release or discharge the tenants of or from their obligations, covenants and agreements to be performed, nor accept any prepayment of rent (except any amount which may be required to be prepaid by the terms of any such Lease) without first securing, on each occasion, the written consent of Lender, which consent shall not be unreasonably withheld or delayed; provided however, Mortgagor may, without the prior written consent of Lender, terminate or surrender any of the Leases which are in default, provided Mortgagor exercises all rights and remedies available to Mortgagor which may be commercially reasonable to pursue.  Mortgagor may enter into non-material modifications of the Leases provided that such modifications are done in the ordinary course of business and do not diminish the rent or other sums payable, or the timing of the payment of same, to the landlord under the Leases.  In addition, Mortgagor covenants and agrees that Mortgagor shall not enter into any new leases for the Property unless (i) such lease is a residential lease and Mortgagor uses a standard form lease which has been previously delivered to and approved by Lender as the basis for new leases executed on the Property, or (ii) Lender has specifically consented to any such new lease, which consent shall not be unreasonably withheld.  With respect to all new tenants executing leases on the Property after the date hereof, Mortgagor covenants and agrees to obtain Lender's consent to any material changes made to the standard form leases referenced above.  With respect to any lease which is not a residential lease, Mortgagor will deliver copies of all lease amendments and new leases to Lender within thirty (30) days after execution whether or not the prior written consent of Lender was required for such amendment or new lease.  Mortgagor shall not, without Lender's written consent, request or consent to the subordination of any of the Leases to any lien subordinate to this Mortgage.  If Mortgagor becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Mortgagor shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, and (ii) within ten (10) days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such setoff and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

21.   <u>Extraordinary Payments Under Leases</u>.  In the event Mortgagor receives or collects any payment in excess of Five Thousand and 00/100 Dollars ($5,000.00) in the aggregate from any tenant under any of the Leases (i) pursuant to any right of early termination or cancellation of any of the Leases, (ii) pursuant to a settlement of the obligations of any tenant under any of the Leases, (iii) pursuant to any claim made by Mortgagor as a result of the termination or rejection of any of the Leases pursuant to any federal or state insolvency or bankruptcy statute permitting the termination or rejection of any of the Leases, or (iv) as a result of the waiver of any obligation under any of the Leases, then Mortgagor shall immediately pay such sums directly to Lender for application against the indebtedness secured hereby in such order of application as Lender may determine.  All such proceeds applied toward the indebtedness secured hereby shall be applied without the imposition of a prepayment penalty or premium.

22.    Security Interest.  This Mortgage shall also be considered a security agreement under the Uniform Commercial Code.  For purposes of this Mortgage, all references to the **"Uniform Commercial Code"** shall be deemed to mean the Uniform Commercial Code, as amended, modified and/or recodified from time to time, in effect in the State whose laws govern and control the construction of the respective security interests granted under this Mortgage. Mortgagor grants and transfers to Lender a security interest in the Chattels and in all other portions of the Property to the full extent that such property and rights may be subject to the Uniform Commercial Code.  Mortgagor hereby authorizes Lender to file with any public office or official (i) such financing statements covering the security interest of Lender in the Property and (ii) such amendment financing statements and correction statements relating to any financing statement covering the security interest of Lender in the Property, as Lender may deem necessary or advisable, at its reasonable discretion, to perfect its security interest.    Such financing statements, amendment financing statements and correction statements may be unsigned or, if required to be signed by the applicable office with which Lender intends to file such financing statement, signed only by a representative of Lender.  Mortgagor shall reimburse Lender upon written demand for any filing fees, documentary taxes, intangible taxes and similar taxes incurred by Lender in connection with the filing of financing statements, or any amendments, corrections or extensions relating thereto, and all such amounts shall be secured by this Mortgage.  To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any damages, penalty or fee against Lender for failure to furnish Mortgagor with any financing statement filed by Lender which relates to the Property.  Mortgagor, to the extent permitted by law, hereby waives and releases all rights to collect or receive any damages, penalty or fee from Lender for failure to furnish Mortgagor with any financing statement filed by Lender which relates to the Property.  Upon the occurrence and during the continuance of an Event of Default hereunder, Lender, at its option and without notice or demand, shall be entitled to enter upon the Premises to take immediate possession of the Chattels or to render the same unusable.  Upon request, Mortgagor shall assemble and make the Chattels available to Lender at a place to be designated by Lender which is reasonably convenient to both parties.  Upon repossession, Lender may propose to retain the Chattels in partial satisfaction of the indebtedness of Mortgagor secured hereby or sell all or any portion of the Chattels at public or private sale in accordance with the Uniform Commercial Code.  In the further event that Lender shall dispose of any or all of the Chattels after the occurrence and during the continuance of an Event of Default, the proceeds of disposition shall be first applied in the following order: (a) to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, (b) to the reasonable attorneys' fees and legal expenses incurred by Lender, and (c) to the satisfaction of the indebtedness secured hereby.  Mortgagor agrees to release and hold harmless Lender from any and all claims arising out of the repossession of the Chattels.  In the event of a proposed sale of all or any part of the Chattels, notification shall be given to Mortgagor at least ten (10) days prior thereto.  From time to time upon the request of Lender, Mortgagor shall furnish to Lender a current detailed written list of all of the Chattels.  Mortgagor shall give prior written notice to Lender of any transfer, sale, pledge, encumbrance, assignment or any other process or action taken or pending, voluntary or involuntary, whereby a third party is to obtain or is attempting to obtain possession of or any interest in any of the Chattels, except in connection with the sale of inventory in the ordinary course of business or disposal of any obsolete equipment for fair market value.  To the extent that the Uniform Commercial Code does not apply to any item of

19

the Chattels, it is the intention of this Mortgage that Lender have a common law pledge and/or collateral assignment of such item of Chattels.

23.    <u>Fixture Filing</u>.  This Mortgage is to be recorded in the real estate records in the Recorder's office of the municipality in which the Premises are located.  THIS MORTGAGE SHALL CONSTITUTE A FIXTURE FILING AND FINANCING STATEMENT TO THE EXTENT PERMITTED UNDER THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE STATE IN WHICH THE PREMISES ARE LOCATED AS TO ALL FIXTURES OWNED BY MORTGAGOR ACTUALLY OR CONSTRUCTIVELY ATTACHED TO THE PREMISES.  In connection therewith, (i) Mortgagor shall be deemed the "debtor"; (ii) Lender shall be deemed the "secured party"; (iii) this Mortgage covers goods which are or are to become fixtures; (iv) the name of the record owner of the Real Estate is Mortgagor; (v) the names and addresses of the secured party (Lender) and the debtor (Mortgagor) are set forth in the opening paragraph of this Mortgage; and (vi) the state of organization of Mortgagor is set forth in the next paragraph of this Mortgage and Mortgagor's organizational identification is 7484419.

24.    <u>State of Organization</u>.  Mortgagor covenants and warrants to Lender that: (i) Mortgagor is a limited partnership duly organized in the Commonwealth of Pennsylvania, (ii) Mortgagor shall continue to maintain its existence in good standing under the laws of the state of its incorporation or organization, as the case may be, at all times, (iii) Mortgagor's legal name as shown on the records of the Secretary of State in which Mortgagor is organized is PAEX Landmark Square PA LP, and such legal name is correctly reflected in the records of the Commonwealth of Pennsylvania, (iv) Mortgagor shall not change its legal name without providing Lender with not less than thirty (30) days prior written notice, and (v) Mortgagor shall not voluntarily or involuntarily dissolve, cancel or terminate its legal existence or change the state of its incorporation or organization, as the case may be.  Mortgagor shall maintain all of Mortgagor's records regarding the Chattels at such chief executive office or residence.

25.    <u>Continuing Lien</u>.  This Mortgage creates a continuing lien to secure the full and final payment of the Note and the performance of the other obligations of Mortgagor under this Mortgage or under any other security documents or agreements executed by Mortgagor in connection with the indebtedness secured hereby.

26.    <u>Successors</u>.  In the event the ownership of the Property, or any part thereof, becomes vested in a person or persons other than Mortgagor, and Lender does not exercise the option reserved to it hereunder to accelerate the indebtedness secured hereby in the event of alienation of all or any part of the Property, Lender may deal with successor or successors in interest with reference to this Mortgage and the indebtedness secured hereby in the same manner as with Mortgagor, without in any manner vitiating or discharging Mortgagor's liability hereunder, or upon the indebtedness hereby secured.

27.    <u>Events of Default</u>.  The occurrence of an "Event of Default" under the Loan Agreement shall constitute an event of default under this Mortgage and each such occurrence is herein referred to as an **"Event of Default"**.  Accordingly, the provisions of the Loan Agreement are by reference incorporated herein and made a part hereof.  For purposes of clarification, an "Event of Default" under the Loan Agreement shall mean the occurrence of any event or

circumstance that would constitute an "Event of Default" as that term is defined in the Loan Agreement.

28.    <u>Specific Remedies</u>.  Upon the occurrence and during the continuance of an Event of Default, in addition to all other rights and remedies available to Lender at law or in equity, Lender shall be entitled to exercise any and all of the following rights and remedies:

a.    Lender may declare any or all of the indebtedness secured hereby to be immediately due and payable without notice or demand.

b.    Lender, at its option, may proceed to foreclose this Mortgage, in one or several concurrent or consecutive proceedings, without relief from valuation and appraisement laws.

c.    At any time during the existence of any such Event of Default, Lender shall be entitled to enter into possession of the Premises (subject to the rights of tenants under Leases) and to collect the rents, issues and profits thereof, accrued and to accrue, and to apply the same on any indebtedness secured hereby (with application against the various obligations constituting the indebtedness secured hereby in such manner and amounts as Lender, in its sole discretion, may determine).

d.    To the extent permitted by applicable law, Lender shall be entitled to the appointment of a receiver in any court of competent jurisdiction for all or any part of the Property, and the proceeds, issues and profits thereof, with the rights and powers referenced herein and such other rights and powers as the court making such appointment shall confer, such powers shall include without limitation the power to collect such rents, issues and profits.  Mortgagor hereby waives (i) notice of the exercise by Lender of its right to obtain the appointment of such receiver and (ii) the posting of any bond by Lender in connection with the appointment of such receiver.  Mortgagor hereby consents to the appointment of such receiver and shall not oppose any such appointment.  Such receiver shall have all powers and duties prescribed by applicable law, all other powers which are necessary or usual in such cases for the protection, possession, control, management and operation of the Property.

e.    Lender may order an appraisal and an environmental site assessment of the Project, to be in such form and scope and to be performed by an appraiser and engineer, as applicable, as Lender may choose in its sole discretion.  All costs and expenses of such appraisal and environmental site assessment shall be immediately paid by Mortgagor upon demand by Lender and such amounts shall be added to the indebtedness secured hereby.

f.    In addition to the rights available to a mortgagee of real property Lender shall also have all the rights, remedies and recourse available to a secured party under the Uniform Commercial Code as adopted in the State in which the Premises is located, including the right to proceed under the provisions of the Uniform Commercial Code governing default as to any property which is subject to the security interest created by

21

this Mortgage or to proceed as to such personal property in accordance with the procedures and remedies available pursuant to a foreclosure of real estate.

All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

29.  <u>Fees and Costs</u>.  Mortgagor shall pay to Lender, or its legal representatives, successors and assigns, the costs and expenses, including but not limited to attorneys' fees and legal expenses, actually incurred by Lender in connection with (i) the exercise of any right or remedy available to it under this Mortgage, whether or not suit is commenced, (ii) the enforcement of any provision contained in this Mortgage, (iii) the collection of any indebtedness or obligations secured hereby, and (iv) any bankruptcy, reorganization, receivership or other proceeding affecting creditor's rights and involving a claim under this Mortgage or any document executed in connection herewith, which fees and costs shall be an additional lien and security interest against the Property and shall be secured hereby.  In addition, Mortgagor shall pay to Lender, or its legal representatives, successors and assigns, attorneys' fees, any sums expended for obtaining title reports for the Premises, for title searches, or for title insurance, and all other costs incurred in any action to foreclose this Mortgage, or for the cure of an Event of Default, which fees and costs shall be an additional lien and security interest against the Property and shall be secured hereby.  Notwithstanding anything contained herein to the contrary, any provision contained herein requiring the reimbursement of attorney's fees incurred by Lender shall be deemed to be limited to reasonable attorneys' fees incurred by Lender.

30.  <u>Rights Cumulative</u>.  In addition to the rights, powers and remedies herein expressly conferred upon Lender, Lender shall be entitled to exercise all rights, powers and remedies available to Lender by law or at equity.  Each right, power or remedy herein expressly conferred upon Lender is cumulative and in addition to every other right, power or remedy, express or implied, now or hereafter arising, available to Lender, at law or in equity, or under any other agreement, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Lender and shall not be a waiver of the right to exercise at any time thereafter any other right, power or remedy.

31.  <u>Compliance with Mortgage Foreclosure Law</u>.  Where any provision of this Mortgage or the other Loan Documents is inconsistent with any provision of the laws of the State in which the Premises are located regulating the creation, perfection, enforcement or priority of a lien or security interest in real or personal property (such laws as amended, modified and/or recodified from time to time, are collectively referred to herein as the "**Applicable Law**"), the provisions of the Applicable Law shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provisions of this Mortgage that can be construed in a manner consistent with the Applicable Law.  Conversely, if any provision of this Mortgage shall grant to Lender any rights or remedies upon an Event of Default which is more limited than the rights that would otherwise be vested in Lender under the Applicable Law in the absence of said provision, Lender shall be vested with the rights granted under the Applicable Law to the fullest extent not prohibited by the Applicable Law.  If any provision of this Mortgage shall grant to Lender (including Lender acting as a mortgagee-in-possession) or a receiver appointed pursuant to the provisions of this Mortgage or any of the other Loan

Documents any powers, rights or remedies prior to, upon or following the occurrence of an Event of Default which are more limited than the powers, rights or remedies that would otherwise be vested in Lender or in such receiver under the Applicable Law in the absence of said provision, Lender and such receiver shall be vested with the powers, rights and remedies granted under the Applicable Law to the full extent permitted by law.

32.   <u>Exercise of Rights</u>.  No failure by Lender in the exercise of any of its rights under this Mortgage shall preclude Lender from the exercise thereof in the event of any subsequent Event of Default, and no delay by Lender in the exercise of its rights under this Mortgage shall preclude Lender from the exercise thereof so long as an Event of Default exists.  Lender may enforce any one or more of its rights or remedies hereunder successively or concurrently.

33.   <u>Additional Assurances</u>.  Mortgagor agrees upon the request by Lender to execute and deliver such further instruments, deeds and assurances including financing statements under the Uniform Commercial Code and will do such further acts as may be necessary or proper to carry out more effectively the purposes of this Mortgage and without limiting the foregoing, to make subject to the lien hereof any property agreed to be subjected hereto or covered by the granting clause hereof, or intended so to be.  Mortgagor agrees to pay any recording fees, filing fees, note taxes, mortgage registry taxes or other charges arising out of or incident to the filing or recording of this Mortgage and such further assurances and instruments.

34.   <u>Extension of Time and Other Acts of Lender</u>.  Lender, at its option, may (i) extend the time for the payment of the indebtedness secured hereby, (ii) reduce the payments thereon, (iii) accept a renewal note or notes therefore, (iv) grant any release, with or without consideration, of the whole or any part of the security for the payment of the indebtedness secured hereby or the release of any person, party or entity liable for payment of said indebtedness, or (v) amend or modify in any respect any of the terms and provisions hereof, of this Mortgage, the Note (including substitution of another note) or of any other Loan Documents (as defined herein), without the consent of any endorser or guarantor and without the consent of Mortgagor if Mortgagor has conveyed title to any of the Property, and any such extension, reduction or renewal shall not affect the priority of this Mortgage or impair the security hereof in any manner whatsoever, or release, discharge or affect in any manner the primary liability of Mortgagor or any endorser or guarantor to Lender.

35.   <u>Partial Release and Additional Security</u>.  Any part of the Property covered by this Mortgage may be released by Lender without affecting the lien and security interest hereby granted as to the remainder, and the security of this Mortgage shall not affect or be affected by any other security for the indebtedness secured hereby nor shall the taking of additional security release or impair the security hereof or liability for the indebtedness secured hereby in any manner whatsoever.

36.   <u>Waiver of Certain Rights by Mortgagor</u>.  Mortgagor for Mortgagor and Mortgagor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property through Mortgagor, hereby waives, releases and relinquishes, to the full extent permitted by law, each of the following:

a.      any right or claim of right to cause a marshalling of Mortgagor's assets or to cause Lender to proceed against any of the security for the indebtedness secured hereby before proceeding under this Mortgage against Mortgagor and Mortgagor hereby agrees that any court having jurisdiction to foreclose the lien of this Mortgage may order the Premises sold as an entirety;

b.      the benefit of all laws now or hereafter existing providing for any appraisement before sale of any portion of the Property;

c.      all errors, defects and imperfections in any proceedings instituted by Lender under this Mortgage;

d.      the benefit of all laws now or hereafter existing providing for the extension of time for the enforcement of the collection of the Note or the debt evidenced thereby or creating or extending a period of redemption from any sale made in collecting said debt;

e.      all rights of redemption, reinstatement, valuation, appraisement, stay of execution and notice of election to mature or declare due the whole of the indebtedness secured hereby in the event of foreclosure of this Mortgage; and

f.      all rights of dower, curtesy, and homestead in and to the Premises.

All principal, interest and other amounts secured by this Mortgage shall be payable without relief from valuation and appraisement laws. To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption. Mortgagor agrees that any payments required to be made hereunder shall become due on demand and Mortgagor expressly waives and relinquishes all rights and remedies (including any rights of subrogation) accorded by applicable law to indemnitors or guarantors. No recovery of any judgment by Lender and no levy of an execution under any judgment upon the Premises or upon any other property of Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Premises or any part of the Premises, or any liens, rights, powers or remedies of Lender under this Mortgage, but such liens, rights, powers and remedies of Lender shall continue unimpaired as before.

37.     Waiver of Right to Trial by Jury. **Mortgagor hereby agrees that any suit, action or proceeding, whether a claim or counterclaim, brought or instituted by any party on or with respect to this Mortgage or any other document executed in connection herewith or which in any way relates, directly or indirectly to any of the Loan Documents or any event, transaction or occurrence arising out of or in any way connected with this Mortgage or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. MORTGAGOR, AND LENDER BY ACCEPTANCE HEREOF, HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.** Mortgagor acknowledges that Mortgagor may have a right to a trial by jury in any such suit, action or proceeding and that Mortgagor hereby is knowingly, intentionally and voluntarily waiving any such right. Mortgagor further acknowledges and

agrees that this paragraph is material to this Mortgage and that adequate consideration has been given by Lender and received by Mortgagor in exchange for the waiver made by Mortgagor pursuant to this paragraph.

38.     <u>Successors and Assigns</u>.   The covenants, conditions and agreements contained in this Mortgage shall bind, and the benefits thereof shall inure to, Mortgagor and Lender, their respective successors, assigns, heirs and legal representatives.

39.     <u>No Agricultural Use</u>.   Mortgagor covenants that the Property shall not be used for either agricultural or farming purposes.

40.     <u>Merger</u>.   In the event Lender acquires any other estate, or any other lien, in the Premises, no merger shall occur as a result thereof unless Lender consents to a merger in writing.

41.     <u>Release of Mortgage</u>.   Lender shall release this Mortgage of record upon the satisfaction in full of each of the following conditions: (i) all agreements and obligations of Lender to make any loan or advance any credit to Mortgagor have been terminated, (ii) all indebtedness and obligations secured hereby have been paid and performed in full, including without limitation the indebtedness and obligations evidenced by the Note and any Rate Management Transaction, and (iii) all Rate Management Transactions have been terminated and all breakage and other termination fees which are payable in connection therewith have been paid in full.  Mortgagor agrees to reimburse Lender for all costs and expense incurred by Lender in connection with the preparation and recording of such release and, if required by Lender, shall pay such anticipated release expenses in advance.

42.     <u>Notices</u>.   Any written notice required or permitted to be given to Lender or to Mortgagor hereunder shall be deemed effective when given in the manner as provided for in the Loan Agreement for the sending of notices to Lender and to Mortgagor.

43.     <u>Invalidity of Any Provision</u>.   It is the intent of this Mortgage to confer to Lender the rights and benefits hereunder to the full extent allowable by law.   If any provision (or a portion thereof) of this Mortgage or of any other document executed in connection herewith is held invalid or unenforceable or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable (each such provision, or applicable portion thereof, is herein referred to as an "**Invalid Provision**"), then (i) the remainder of this Mortgage, or the application of such Invalid Provision to any other person or circumstance, shall be valid and enforceable to the fullest extent permitted by law, (ii) the Invalid Provision shall be deemed to be severable in such instance, and (iii) Mortgagor and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Mortgage.

44.     **<u>Submission to Jurisdiction</u>.   Mortgagor acknowledges that the office of Lender from which the loan evidenced by the Note is being originated is located in Hamilton County, Indiana and that Lender may be irreparably harmed if required to institute or defend any action in any jurisdiction other than a local, state or federal court located within Hamilton County, Indiana.  Therefore, Mortgagor irrevocably agrees that any suit, action or other legal proceeding arising directly, indirectly or otherwise in**

connection with, out of, related to or from the Note, this Mortgage or any of the other Loan Documents may be brought in either (i) a court located within Hamilton County, Indiana, or (ii) a court located within the State in which the Premises are located. Furthermore, Mortgagor irrevocably (i) consents and submits to the jurisdiction of any local, state or federal court located within Hamilton County, Indiana and within the State in which the Premises are located, (ii) waives any objection which Mortgagor may have to the laying of venue in any suit, action or proceeding in any such courts, and (iii) waives any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Notwithstanding anything contained in this paragraph to the contrary, Lender shall have the right to commence and litigate any suit, action or proceeding against Mortgagor or any property of Mortgagor in any court of any other appropriate jurisdiction. Nothing herein shall be deemed to limit any rights, powers or privileges which Lender may have pursuant to any law of the United States of America or any rule, regulation or order of any department or agency thereof and nothing herein shall be deemed to make unlawful any transaction or conduct by Lender which is lawful pursuant to, or which is permitted by, any of the foregoing.

45.    <u>Governing Law</u>.    To the fullest extent permitted by any applicable law, this Mortgage shall be governed by and construed in accordance with the laws of the State of Indiana, notwithstanding that Indiana conflicts of law rules might otherwise require the substantive rules of law of another jurisdiction to apply. Notwithstanding anything expressed or implied herein to the contrary, the laws of the Commonwealth of Pennsylvania shall be deemed to govern and control with respect to (i) the creation, perfection, enforcement and/or priority of a lien or security interest in the Premises, in the Leases, in that portion of the other Property that is located within the Commonwealth of Pennsylvania, and in any other property of Mortgagor that is located within the Commonwealth of Pennsylvania granted, assigned or conveyed by this Mortgage, (ii) the perfection, or the effect of perfection or non-perfection, of the security interests granted by this Mortgage in any of the Property that is located within the Commonwealth of Pennsylvania, (iii) the availability of, and procedures relating to, any remedy hereunder or related to this Mortgage, and (iv) any other provision of this Mortgage to the extent that application of the laws of the Commonwealth of Pennsylvania are needed in order to obtain the practical realization of the principal benefits and/or security intended to be provided by this Mortgage. Provided, however, if by reason of mandatory provisions of law, the perfection, the effect of perfection or nonperfection, and the priority of a security interest in any personal property are governed by the Uniform Commercial Code in effect in a jurisdiction other than Indiana or Pennsylvania, then such other jurisdiction shall govern and control the provisions hereof relating to perfection, effect of perfection or non-perfection, and the priority of the security interests in any such personal property.

46.    <u>USA Patriot Act Notice; Compliance</u>.    The USA Patriot Act of 2001 (Public Law 107-56), as amended from time to time and any successor statute (herein, the "**PATRIOT Act**"), and federal regulations issued with respect thereto require all financial institutions to obtain, verify and record certain information that identifies each individual or business entity which opens an "account" or establishes a relationship with such financial institution. Consequently, Lender may from time-to-time request, and Mortgagor shall provide to Lender, (i) Mortgagor's name, address, tax identification number, date of birth, and other information that will allow Lender to identify Mortgagor, (ii) the name, address, tax identification number, date of birth, and

other information that will allow Lender to identify each guarantor of the indebtedness secured hereby, (iii) the name, address, tax identification number, date of birth, and other information that will allow Lender to identify each officer, partner, member, shareholder or other stakeholder of Mortgagor, and/or (iv) such other identification information as shall be necessary for Lender to comply with federal law. Mortgagor shall provide such information and take such actions as are reasonably requested by Lender in order to assist Lender in maintaining compliance with the PATRIOT Act. An "account" for this purpose may include, without limitation, a deposit account, cash management service, a transaction or asset account, a credit account, a loan or other extension of credit, and/or other financial services product.

47.    REMIC Savings Clause.    Notwithstanding anything to the contrary contained herein, including Sections 7 and 12, if the Loan is included in a "real estate mortgage investment conduit" (as defined in Section 860D of the Internal Revenue Code of 1986, as amended, and applicable U.S. Department of Treasury regulations issued pursuant thereto) (a "REMIC") trust and the ratio of the unpaid principal balance of the Loan to the value of the Property (as determined by Lender using any commercially reasonable method permitted to a REMIC trust, and which shall exclude the value of any personal property (other than fixtures) or going concern value, if any) exceeds or would exceed 125% immediately after giving effect to the release of any portion of the Property, no release of such Property will be permitted unless the principal balance of the Loan is prepaid by an amount not less than the least amount that is a "qualified amount" as that term is defined in Internal Revenue Service Revenue Procedure 2010-30, as the same may be amended, replaces, supplemented or modified from time to time, unless Lender receives an opinion of counsel that, if this paragraph is applicable but not followed or is no longer applicable at the time of such release, the REMIC trust will not fail to maintain its status as a REMIC trust as a result of the release of such Property.

48.    Authorization to Complete Blanks and Conform to Recording Requirements.    In the event Mortgagor executes and delivers this Mortgage or any other Loan Documents to Lender with any blank relating to the effective date of any such Loan Documents, the maturity date of the Note, the address of any party to the Loan Document or the effective date of any other document referenced herein or therein. Mortgagor authorizes Lender, and its agents, to make the modifications necessary or appropriate to conform this Mortgage to the requirements for the county recorder in the State where the Premises are located in order to render it in a form acceptable for recording.

49.    Interpretation.    The captions or headings herein have been inserted solely for the convenience of reference and in no way define or limit the scope, intent or substance of any provision of this Mortgage. Whenever the content requires or permits the singular shall include the plural, the plural shall include the singular and the masculine, feminine and neuter shall be freely interchangeable. This Mortgage shall be construed without regard to any presumption or other rule requiring construction against the party or parties causing this Mortgage to be drafted. If used herein, the term "gross negligence" shall be deemed to mean a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences as affecting any other party to this Mortgage and the Property.

50.    <u>Purchase Money Mortgage</u>. This Mortgage is a purchase money mortgage and is entitled to all the benefits of such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. C.S.A. § 8141, as amended.

51.    <u>Obligatory Advances</u>. If the Loan Documents provide that any advances of Loan proceeds shall be made upon Mortgagor's performance of certain obligations (including, without limitation, compliance with the Loan Agreement's requirement that no Event of Default has occurred), such advances shall be "obligatory advances" and shall maintain the same lien priority as the Mortgage's earliest lien priority, whether Lender retains the funds or deposits them into an escrow account Lender controls. If Lender receives notice that: (a) a lien or encumbrance has been placed on the Property that is subordinate to the Mortgage lien; (b) labor has been or will be performed on, or materials have been or will be supplied to, the Property; or (c) Mortgagor is attempting to limit the indebtedness secured by the Mortgage, Lender may condition the advances upon Lender's receipt of a declaratory judgment, opinion of counsel, or title endorsement satisfactory to Lender confirming that advances shall have the same lien priority as the earliest lien priority of the Mortgage.

52.    <u>Post-Judgment Remedies</u>. After any judgment under this Mortgage or any other Loan Document, whether such judgment is in foreclosure, or otherwise, Lender may petition the court in which such judgment was entered to reassess damages and modify the judgment. The modification may include, without limitation, amounts that have been advanced or paid by Lender, or are due and payable after the entry of the judgment for taxes, water and sewer, other lienable charges or claims, attorneys' fees, insurance, repairs, maintenance, and additional accrued interest at the Default Rate, as defined in the Note.

[the remainder of this page is intentionally left blank,
see the following page for signature of Mortgagor]

28

## SIGNATURE PAGE FOR MORTGAGOR TO MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FINANCING STATEMENT, AND FIXTURE FILING (FACILITY A)

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be executed and delivered effective as of the date first above written.

MORTGAGOR:

PAEX LANDMARK SQUARE PA LP,
a Pennsylvania limited partnership

By:    PAEX Landmark Apartment LLC,
a Delaware limited liability company,
its General Partner

By: _____
Aron Puretz, Member

STATE OF  NJ          )
               ) SS:
COUNTY OF Essex     )

Before me, a Notary Public in and for said County and State, personally appeared Aron Puretz, who acknowledged himself to be the Member of PAEX Landmark Apartment LLC, a Delaware limited liability company, which is the General Partner of PAEX Landmark Square PA LP, a Pennsylvania limited partnership who, after having been duly sworn, acknowledged the execution of the foregoing Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement, and Fixture Filing (Facility A) for and on behalf of such limited partnership.

WITNESS my hand and Notarial Seal this ___1___ day of ___September___, 2022.

_____
(                                    ) Notary Public

My Commission Expires:        My County of Residence:

9/28/2026                          Monmouth

This instrument prepared by Michael A. Valinetz, Attorney-at-Law, Dinsmore & Shohl LLP, One Indiana Square, Suite 1800, Indianapolis, Indiana 46204.

**Mortgagor Address**

**10 Hill Street, Suite 1E, Newark NJ 07102**

**Noami Sidarenka - Agent**

## EXHIBIT "A"

## Legal Description

PARCEL 1:

All that certain piece or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, being the Easterly 30 feet of Lot No. 34 and all of Lot No. 35 in Block 3 on the Boulevard Park Re-Subdivision dated October 19, 1907 and recorded October 30, 1907 in the Recorder of Deeds Office of Erie County, Pennsylvania in Map Book 1, Page 349 and bounded and described as follows:

BEGINNING at the Southwesterly corner of the piece herein described at an iron survey Point found at the intersection of the Northerly right-of-way line of West Tenth Street, a 100 foot Right-of-Way, and the Easterly right-of-way line of Weschler Avenue, a 72 foot wide Right-of-Way; thence North 26° 02' 00" West, along the Easterly right-of-way line of Weschler Avenue, 103.12 feet to an iron survey point found; thence North 64° 00' 00" East, along the line common with lands now or formerly of Dennis C. and Lauren M. Brady, as described in Erie County Record Book 448, Page 1088, 71.25 feet to an iron survey point set; thence South 26° 02' 00" East, along the line common with lands now or formerly of Glen & Paula Stafford, as described in Erie County Record Book 300, Page 2311, 103.12 feet to an iron survey point found in the Northerly right-of-way line of West Tenth Street, aforesaid; thence South 64° 00' 00" West, along the Northerly right-of-way line of West Tenth Street, 71.25 feet to an iron survey point found, being the Point of Beginning.

Containing 0.169 acres of land.

Tax ID / Parcel Nos. 16-030-061.0-128.00 & 16-030-061.0-129.00

PARCEL 2:

All that certain piece or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, being shown on an ALTA/NSPS Land Title Survey by Henry T. Welka & Associates dated June 3, 2019 and being more particularly bounded and described as follows to-wit:

BEGINNING at the Southeasterly corner of the piece herein described on the in the Northerly line of West 10th Street (a 100 foot right of way) being South 64' 00' 00' West a distance of 250 feet from the Westerly line of Weschler Avenue (a 72.00 foot right of way);

thence South 64' 00' 00" West along said Northerly line of West 10th Street a distance of 105.00 feet to the Southeasterly corner of lands now or formerly of Reed Manufacturing Company (Deed Book 1552, Page 392);

thence along said lands of Reed Manufacturing Company the following two courses:

North 26' 02' 00" West a distance of 113.00 feet;

thence North 64' 00' 00" East a distance of 105 feet to the Westerly line of lands now or formerly of DSSP, LLC (Instrument Number 2015-022049);

thence south 26' 00' 00" East along the Westerly line of DSSP, LLC a distance of 113.00 feet to the Point of Beginning.

Containing 0.272 acre (11,865 Sq. Ft).

Tax ID / Parcel No. 16-031-003.0-118.00

Exhibit "A" to Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement, and Fixture Filing

PARCEL 3:

All that certain piece or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, bounded and described as follows, to-wit:

BEGINNING at the Northeasterly corner of the piece herein described at a Point at the intersection of the Westerly right-of-way line of Weschler Avenue, a 72 foot wide Right-of-Way, with the Southerly right-of-way line of Pearce Park, a 38 foot side Right-of-Way; thence South 26° 02' 00" East, along the Westerly right-of-way line of Weschler Avenue, 146.00 feet to an iron survey point found in the Northerly right-of-way line of West Eleventh Street, a 60 foot wide Right-of-Way; thence South 64° 00' 00" West, along the Northerly right-of-way line of West Eleventh Street, 300.90 feet to an iron survey point found in the Easterly right-of-way line of Amber Court, a 29 foot wide Right-of-Way; thence North 26° 02' 00" West, along the Easterly right-of-way line of Amber Court, 146.00 feet to an iron survey point found in the Southerly right-of-way line of Pearce Park, aforesaid; thence North 64° 00' 00" East, along the Southerly right-of-way line of Pearce Park,
300.90 feet to a point, being the point of beginning.

Containing 1.009 acres of land.

Tax ID / Parcel No. 16-031-002.0-200.00

PARCEL 4:

All that certain piece or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, bounded and described as follows, to-wit:

BEGINNING at the Northeasterly corner of the piece herein described, at a point at the intersection of the Westerly right-of-way line of Weschler Avenue, a 72 foot wide Right-of-Way, with the Southerly right-of-way of West Tenth Street, a 100 foot wide Right-of-Way; thence South 26° 02' 00" East, along the Westerly right-of-way line of Weschler Avenue, 146.00 feet to a lead survey point found in the Northerly right-of-way line of Pearce Park, a 38 foot wide Right-of-Way; thence South 64° 00' 00" West, along the Northerly right-of-way line of Pearce Park, 300.90 feet to a lead survey point found in the Easterly right-of-way line of Amber Court, a 29 foot wide Right-of-Way; thence North 26° 02' 00" West, along the Easterly right-of-way line of Amber Court, 146.00 feet to a lead survey point found in the Southerly right-of-way of West Tenth Street, aforesaid; thence North 64° 00' 00" East, along the Southerly right-of-way of West Tenth Street, 300.90 feet to a point, being the point of beginning.

Containing 1.009 acres of land.

Tax ID /  Parcel No. 16-031-002.0-300.00

PARCEL 5:

All that certain piece or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, bounded and described as follows, to-wit:

BEGINNING at the Northeasterly corner of the piece herein described, at a lead survey Point found intersection of the Westerly right-of-way line of Amber court, a 29 foot wide Right-of-Way, with the Southerly right-of-way line of West Tenth Street, a 100 foot wide Right-of-Way; thence South 26° 02' 00" East, along the Westerly right-of-way line of Amber Court, 146.00 feet to a lead survey point found in the Northerly right-of-way line of Pearce Park, a 38 foot wide Right-of-Way; thence South 64° 00' 00" West, along the Northerly right-of-way line of Pearce Park, 311.00 feet to a lead survey point found in the Easterly right-of-way line of Abbey Lane (formerly West Drive), a variable width Right-of-Way; thence North 26° 02' 00" West, along the Easterly right-of-way line of Abbey Lane, 146.00 feet to an iron survey point found in the Southerly right-of-way line of West Tenth Street, aforesaid; thence North 64° 00' 00"

East, along the Southerly right-of-way line of West Tenth Street, 311.00 feet to a lead survey point, being the point of beginning.

Containing 1.042 acres of land.

Tax ID / As to Parcel No. 16-031-002.0-400.00

PARCEL 6:

All that certain piece or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, bounded and described as follows, to-wit:

BEGINNING at the Northeasterly corner of the piece herein described at a Point at the intersection of the Westerly right-of-way line of Ambert Court, a 29 foot wide Right-of-Way, with the Southerly right-of-way line of Pearce Park, a 38 foot wide Right-of-Way; thence South 26° 02' 00" East, along the Westerly right-of-way line of Ambert Court, 146.00 feet to a point in the Northerly right-of-way line of West Eleventh Street, a 60 foot Right-of-Way; thence South 64° 00' 00" West, along the Northerly right-of-way line of West Eleventh Street, 311.00 feet to a point in the Easterly right-of-way line of Abbey Lane (formerly West Drive), a variable width Right-of-Way; thence No. 26° 02' 00" West, along the Easterly right-of-way line of Abbey Lane, 146.00 feet to a point in the Southerly right-of-way line of Pearce Park, aforesaid; thence North 64° 00' 00" East, along the Southerly right-of-way line of Pearce Park, 311.00 feet to a point, being the point of beginning.

Containing 1.042 acres of land.

Tax ID / Parcel No. 16-031-002.0-500.00

PARCEL 7:

All that certain lot or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, being Lot 1 on Abbey Lane Subdivision, Third Ward - Tract 23 - City of Erie, dated February 4, 1975 and recorded February 28, 1975 in the Recorder of Deeds Office of Erie County, Pennsylvania in Map Book Map Book 10, Page 63.

BEGINNING at the Northeasterly corner of the piece herein described, at a point at the Northerly terminus of the Westerly right-of-way line of Abbey Lane (formerly West Drive), a variable width Right-of-Way, said point being South 64° 00' 00" West, a distance of 20.24 feet from the intersection of the centerline of Abbey Lane with the centerline of West Tenth Street, a 100 foot Right-of-Way; thence South 25° 59' 56" East, along the Westerly right-of-way line of Abbey Lane, 380.24 feet to a point; thence South 64° 00' 15" West, along the line common with lands now or formerly of Erie Diesel & Truck Service, Inc., as described in Erie County Deed Book 1069, page 493, 190.60 feet to a point; thence North 26° 24' 54" West, continuing along lands of Erie Diesel & Truck Service, Inc., 61.52 feet to an iron survey point found; thence North 04° 15' 21" West, along the Easterly line of land now or formerly of Penn Advertising, Inc., as recorded in Erie County Record Book 313, Page 1035, 282.46 feet to a point; thence along the Easterly right-of-way line of the Bayfront Parkway, a variable width Right-of-Way, it being a curve to the left, having a radius of 550.30 feet, an arc distance of 67.35 feet to a point; thence North 64° 00' 00" East, along the line of common with lands now or formerly of the Reed Manufacturing Company, as described in Erie County Deed Book 1552, Page 392, 49.59 feet to a point, being the Point of Beginning.

Containing 1.192 acres of land.

TAX ID / Parcel No. 16-031-004.0-106.00

PARCEL 8:

All that certain piece or parcel of land situate in the Third Ward of the City of Erie, County of Erie and Commonwealth of Pennsylvania, being shown on an ALTA/NSPS Land Title Survey by Henry T. Welka & Associates dated June 3, 2019 and being more particularly bounded and described as follows to-wit:

Beginning at Southeasterly corner of the piece herein described on the Northerly line of West 10th Street (a 100.00 foot right of way), being South 64' 00' 00" West a distance of 220.00 feet from the Westerly line of Weschler Avenue (72.00 foot right of way);

thence South 64' 00' 00" West along said Northerly line of West 10th Street a distance of 30.00 feet to the Southeasterly corner of lands now or formerly of Landmark Square Apartments II, LLC (Instrument Number 2013-005698);

thence North 26' 02' 00" West along the Easterly line of lands now or formerly of Landmark Square Apartments II, LLC for a distance of 113.00 feet thence continuing along lands now or formerly Reed Manufacturing Co. (Deed Book 1552, Page 392) for a distance of 52.00 feet, in all a total of 165 feet;

thence North 64' 00' 00" East continuing along said lands of Reed Manufacturing Co. a distance of 30.00 feet to the Northwesterly corner of lands now or formerly of Cynthia A. Lorellu (Record Book 308, Page 2315);

thence South 26' 02' 00" East along the Westerly line of said lands of Cynthia A. Lorelli a distance of 165.00 feet to the Point of Beginning.

Containing 0.1136 acre (4,950 Sq. Ft.)

Tax ID / Parcel No. 16-031-003.0-119.00

TOGETHER WITH a non-exclusive easement for ingress and egress access as well as parking as further described in the Easement Agreement from the City of Erie to Ashwood partners LLC recorded September 18, 2006, in the Recorder of Deeds Office of Erie County, Pennsylvania in Record Book 1361, Page 2368.


AS TO PARCELS 1 - 7:\line\line Being the same premises which Landmark Square Apartments II, LLC, an Ohio limited liability company by Deed dated June 17, 2019 and recorded July 2, 2019 in Erie County in Instrument No. 2019-012683 conveyed unto Erie Landmark Real Estate Partners, L.P., a Pennsylvania limited liability company, in fee.

AS TO PARCEL 8:

Being the same premises which DSSP, LLC, an Ohio limited liability company by Deed dated June 17, 2019 and recorded July 2, 2019 in Erie County in Instrument No. 2019-012684 conveyed unto Erie Landmark Real Estate Partners, L.P., a Pennsylvania limited liability company, in fee.